Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| IYARIZ SANTOS OJEDA<br><br>EN INTERÉS DE: EDGARDO J. FELICIANO CINTRÓN<br><br>*Ex Parte*<br><br>*Recurridos*<br><br><br><br>ADMINISTRACIÓN DE SERVICIOS DE SALUD MENTAL Y CONTRA LA ADICCIÓN (ASSMCA)<br><br>*Peticionario* | KLCE202400204 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: K2JV2022-0326 (507)<br><br>Sobre: Ingreso Involuntario Art. 4.14 de la Ley Núm. 408-2000, según enmendada, Ley de Salud Mental de Puerto Rico |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante nos la Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA o parte peticionaria) mediante recurso de *Certiorari* y nos solicita la revisión de la *Orden* emitida el 30 de noviembre de 2023, reducida a escrito el 1 de diciembre de 2023 y notificada el 6 de diciembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario). Mediante el aludido dictamen, el foro primario le impuso a la ASSMCA una cuarta sanción por la cantidad de quinientos dólares ($500.00) debido a incumplimiento con una orden de ubicación.

El 13 de diciembre de 2023, la ASSMCA presentó *Moción Solicitando Reconsideración*, la cual fue denegada por el TPI mediante *Orden* emitida el 16 de enero de 2024, notificada el 22 de enero de 2024.

Número Identificador

SEN2024_____

Por los fundamentos que exponemos a continuación, **expedimos** el auto de *certiorari* y **confirmamos** el dictamen recurrido.

### I.

Según surge del recurso, el 30 de noviembre de 2023, reducida a escrito el 1 de diciembre de 2023 y notificada el 6 de diciembre de 2023, el TPI emitió una *Orden*[1] en la que le impuso a la ASSMCA una cuarta sanción por la cantidad de quinientos dólares ($500.00) por incumplimiento con una orden de ubicación del señor Edgardo J. Feliciano Cintrón (señor Feliciano Cintrón o parte recurrida), la cual fue emitida el 27 de octubre de 2022[2] por el referido foro.

En desacuerdo con la determinación, el 13 de diciembre de 2023, la ASSMCA presentó una *Moción Solicitando Reconsideración*[3]. En esta, informó que el señor Feliciano Cintrón hacía el turno once (11) en la categoría grupal de varones. Adujo que había más pacientes pendientes de ubicación, por lo que "[l]a orden de ubicación inmediata del Tribunal equivaldría a quebrantar el "turno" a diez pacientes que están esperando primero"[4]. Además, informó que la Oficina de Organismos Reguladores estaba evaluando un posible hogar para la ubicación del señor Feliciano Cintrón. En virtud de lo anterior, solicitó la reconsideración de la sanción.

El 16 de enero de 2024, notificada el 22 de enero de 2024, el TPI emitió una *Orden*[5] en la que declaró no ha lugar la *Moción Solicitando Reconsideración* presentada por la ASSMCA.

---

[1] Apéndice del recurso de *certiorari*, págs. 3-5.
[2] Cabe mencionar que la representación legal de la ASSMCA no incluyó en el apéndice del recurso copia de la referida Orden emitida el 27 de octubre de 2022 por el foro primario.
[3] Apéndice del recurso de *certiorari*, págs. 6-7.
[4] Apéndice del recurso de *certiorari*, pág. 6.
[5] Apéndice del recurso de *certiorari*, págs. 8-9.

Inconforme, el 20 de febrero de 2024, la ASSMCA compareció ante nos mediante el recurso de epígrafe y le imputó al TPI la comisión del siguiente error:

COMETÍ[Ó] GRAVE ERROR EL TRIBUNAL DE PRIMERA INSTANCIA, SALA MUNICIPAL DE SAN JUAN[,] AL DICTAR UNA RESOLUCIÓN DECLARANDO NO HA LUGAR LA RECONSIDERACI[Ó]N Y AL INTERFERIR CON LA POLÍTICA PÚBLICA DEL PODER EJECUTIVO EN CUANTO A LA FORMA Y MANERA EN QUE ASSMCA OFRECE LOS SERVICIOS A LA POBLACIÓN AL ORDENARLE A LA ASSMCA A UBICAR AL PACIENTE [EDGARDO] FELICIANO CINTRÓN EN UN HOGAR SIN CABIDA E IMPONIENDO SANCIONES, AFECTANDO LA SEPARACIÓN DE PODERES.

Examinado el recurso de epígrafe, el 11 de marzo de 2024, emitimos una *Resolución* en la que ordenamos al TPI remitir a este foro, en calidad de préstamo, los autos originales del caso. Además, señalamos una vista oral a celebrarse el miércoles, 3 de abril de 2024, con el propósito de conocer las gestiones realizadas por la agencia para ubicar a los participantes del Programa de Servicios Orientados a la Recuperación (SOR) en la categoría grupal que se encuentra la parte recurrida. Para ello, se ordenó la comparecencia de la Lcda. Carmen Bonet Vázquez, Administradora de la ASSMCA (señora Bonet Vázquez).

El 2 de abril de 2024, un día antes de la fecha en que se llevaría a cabo la vista oral, la ASSMCA, por conducto del Lcdo. Hernán Vélez Álvarez y la Lcda. Mirla Mireya Rodríguez Marín, compareció mediante una *Moción Informativa*, en la cual solicitó que se excusara a la señora Bonet Vázquez por no poder comparecer a la vista a celebrarse el día siguiente. Además, la ASSMCA presentó una amplia relación de hechos acompañada de varios documentos que no habían sido incluidos en el recurso. Por último, informaron que el 27 de marzo de 2024 el señor Feliciano Cintrón había sido ubicado en un hogar.

Por otro lado, el 22 de abril de 2024, la Sociedad para Asistencia Legal (SAL) representante del señor Feliciano Cintrón presentó una *Moción en Cumplimiento de Orden y Solicitud de*

*Desestimación.* En síntesis, alegó que, solicitó la desestimación del recurso de *Certiorari,* presentado por ASSMCA por incumplir con el Reglamento del Tribunal de Apelaciones y las Reglas de Procedimiento Civil. Además, adujo que la actuación del foro primario no fue en forma alguna injusta ni irrazonable y los problemas presupuestarios o de contratación de la ASSMCA no pueden ser óbice o excusa para incumplir por años con una orden final y firme del TPI[6].

Así las cosas, luego de una recalendarización, el 2 de mayo de 2024, se celebró la vista oral. A dicha vista, comparecieron presencialmente los representantes legales de la ASSMCA; la administradora Lcda. Bonet Vázquez; y, los representantes legales del señor Feliciano Cintrón. El señor Feliciano Cintrón compareció a través de videoconferencia.

Con el beneficio de la comparecencia de las partes, el expediente judicial, las argumentaciones expuestas en la vista oral y la normativa jurídica aplicable, procedemos a resolver.

**II.**

**-A-**

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[7]. La determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial[8]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[9]. Empero, el ejercicio de la

---

[6] Véase *Moción en Cumplimiento de Orden y Solicitud de Desestimación.*
[7] Véase *Torres González v Zaragoza Meléndez,* 211 DPR 821 (2023); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012); *García v. Padró,* 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia,* 154 DPR 79, 90-92 (2001).
[8] *Íd.*
[9] *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2014); *Negrón v. Srio. de Justicia, supra,* pág. 91.

discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[10].

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil[11]. La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo"[12]. Asimismo, y a manera de excepción, se podrá expedir este auto discrecional en las siguientes instancias:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia[13].

En consecuencia, las determinaciones que cumplan con la Regla 52.1 de las de Procedimiento Civil, *supra*, pueden ser objeto de revisión y el tribunal apelativo ejercerá su discreción para decidir si expide o no el recurso de *certiorari*. Los criterios que este Tribunal de Apelaciones examina para ejercer su discreción se encuentran recogidos en la Regla 40 de nuestro Reglamento, 4 LPRA XXII-B, R. 40. Esta norma procesal dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

---

[10] *Íd.*
[11] 32 LPRA Ap. V, R. 52.1.
[12] *Íd.*
[13] *Íd.*

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, para ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios antes enumerados, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto de *certiorari*[14]. Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirijan[15]. Precisa recordar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera[16]".

**-B-**

Nuestro ordenamiento procesal civil establece la facultad que ostentan los tribunales para imponer a la parte o a su representación legal la sanción económica que corresponda por el incumplimiento con los términos y señalamientos en los procesos judiciales, así como por la desobediencia a las órdenes para el manejo del caso, cuando no medie justa causa[17].

En lo pertinente, el Tribunal Supremo de Puerto Rico ha expresado que son los tribunales de origen o de instancia los que están en mejor posición para determinar cómo se debe manejar un caso ante su consideración[18]. Como guía a los foros apelativos, dispuso que las determinaciones que haga un tribunal de instancia,

---

[14] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[15] *IG Builders et al. v. BBVAPR*, *supra*; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011).
[16] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).
[17] Regla 37.7 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.7.
[18] *Rebollo López v. Gil Bonar*, 148 DPR 673, 678 (1999).

en el sano ejercicio de su discreción, deben ser respetadas, a menos que se demuestre arbitrariedad, claro abuso de discreción, determinación errónea que cause grave perjuicio a una de las partes, o la necesidad de un cambio de política pública, procesal o sustantiva.

En *Pérez Torres v. Acad. Perpetuo Socorro*[19] el Tribunal Supremo decretó que existen circunstancias en que de conformidad con las Reglas de Procedimiento Civil aplicables se pueden imponer sanciones económicas, tanto a las partes como a los abogados que las representan; y que los tribunales de instancia tienen amplia discreción para imponerlas.

Aunque nuestro ordenamiento favorece que los casos se ventilen en sus méritos, esto no quiere decir que una parte tenga el derecho a que su caso "adquiera vida eterna en los tribunales, manteniendo a la otra en un estado de incertidumbre, sin más excusa para su falta de diligencia e interés en la tramitación del mismo que una escueta referencia a 'circunstancias especiales'"[20].

### III.

En su único señalamiento de error, la ASSMCA alega que incidió el TPI al imponerle una cuarta sanción por la cantidad de quinientos dólares ($500.00) por incumplimiento con una orden de ubicación del señor Feliciano Cintrón. Sostiene que la determinación del foro primario interfiere con la política pública del poder ejecutivo en cuanto a la forma y manera en que la ASSMCA ofrece los servicios a la población, afectando así la separación de poderes.

---

[19] 182 DPR 1016, 1026-1031 (2011).
[20] *S.L.G. v. Mini-Warehouse*, 179 DPR 322, 334 (2010); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 124 (1992); *Dávila v. Hosp. San Miguel, Inc.*, 117 DPR 807, 816 (1986).

Tras examinar los autos originales del caso, a continuación, incluimos los hechos más relevantes, que fueron expuestos durante la vista oral, para la disposición del presente recurso.

Primeramente, el 11 de mayo de 2022, el señor Feliciano Cintrón ingresó al Hospital Pavía Hato Rey (Hospital Pavía) bajo el caso SJL-408-2022-8568. Al día siguiente, el TPI emitió una orden de ingreso involuntario por un máximo de quince (15) días y citó para una vista de seguimiento el 19 de mayo de 2022 bajo el caso K2JV2022-0326. En dicha vista, el foro primario ordenó que el señor Feliciano Cintrón continuara en el hospital hasta el 31 de mayo de 2022, a menos que fuera ubicado en un hogar.

El 31 de mayo de 2022, se celebró vista de seguimiento. En esta, el TPI indicó a las partes que la recomendación del equipo multidisciplinario para el señor Feliciano Cintrón era tratamiento residencial, por lo que no podía ser dado de alta con tratamiento ambulatorio[21]. Asimismo, emitió orden de extensión del término de ingreso involuntario hasta el 15 de junio de 2022 y señaló vista de seguimiento para la misma fecha, ello en el caso K2JV2022-0326.

En la vista de seguimiento celebrada el 15 de junio de 2022, la señora Mayra Robles Álvarez, psicóloga clínica del Programa SOR, manifestó que el señor Feliciano Cintrón se encontraba en el turno veintiocho (28) para ser ubicado en un hogar de categoría grupal.

---

[21] Con respecto a los principios que regirán el sistema de cuidado de salud mental, el Artículo 1.04 de la Ley Núm. 408-2000, *supra*, establece, en lo pertinente, lo siguiente:

*(c) Sistema de Cuidado Abarcador. —*

El sistema de cuidado a brindarse debe ser desarrollado sobre la base del continuo de servicios, donde se planifique todo el cuidado que necesita la población con trastornos mentales, o en riesgo de tenerlos, incluyendo los servicios que se van a proveer como necesarios en la comunidad y en otras agencias para la persona y su familia. Algunos de los elementos necesarios para el desarrollo de un sistema abarcador son los siguientes:

[...]

(3) *Tratamiento ambulatorio.* — Es el nivel de cuidado de menor intensidad y de mayor autonomía. Consiste de visitas regulares de la persona y su familia a la institución proveedora de salud mental para recibir, de ser necesario, los siguientes servicios entre otros; psicoterapia o consejería individual, grupal, familiar o de pareja y farmacoterapia.

[...] 24 LPRA sec. 6152.

El 23 de junio de 2022, el TPI celebró una vista de seguimiento, en la que la representación legal del señor Feliciano Cintrón solicitó que se emitiera resolución bajo el Artículo 4.11 de la Ley Núm. 408 de 2 de octubre de 2000, según enmendada, conocida como *Ley de Salud Mental de Puerto Rico* (Ley Núm. 408-2000), sobre tratamiento compulsorio[22]. Además, el Hospital Pavía solicitó el traslado del señor Feliciano Cintrón al Hospital Psiquiátrico Dr. Ramón Fernández Marina (Hospital Fernández Marina). El TPI emitió resolución de tratamiento compulsorio en su modalidad residencial y ordenó a la ASSMCA el traslado del señor Feliciano Cintrón al Hospital Fernández Marina. **Además, apercibió a la agencia sobre la imposición de sanciones en caso de incumplimiento con lo ordenado.**

En esta misma fecha, notificada el 27 de junio de 2022, el TPI ordenó al Hospital Pavía trasladar al señor Feliciano Cintrón, en el término de cinco (5) días, al Hospital Fernández Marina, hasta que se cumpliera con el plan de egreso conforme la Resolución con el nivel de cuidado residencial, emitida el 23 de junio de 2022.

El 15 de julio de 2022, Metro Hato Rey, Inc. h/n/c Hospital Pavía Hato Rey compareció mediante *Urgente Moción sobre Incumplimiento de Orden*. En esta, alegó que el Hospital Fernández Marina rehúsa recibir al señor Feliciano Cintrón. Por tanto, solicitó que se encuentre incurso en desacato al Hospital Fernández Marina.

---

[22] En cuanto al tratamiento compulsorio, el Artículo 4.11 de la Ley Núm. 408-2000, *supra*, dispone lo siguiente:

Aquellas personas que como resultado de la evaluación, inicial, no requieran el nivel de cuidado de la intensidad de hospitalización, pero sí representa riesgo para sí, otros o la propiedad y requiera de un nivel de cuidado de mayor autonomía, el psiquiatra en conjunto con el equipo de profesionales inter o multidisciplinario, recomendará al tribunal que ordene su participación compulsoria en el nivel de tratamiento de menor intensidad y de mayor autonomía, so pena de incurrir en un desacato al tribunal, de no asistir al mismo. La institución que tenga a cargo la administración del tratamiento compulsorio vendrá obligada a informar al tribunal sobre la comparecencia y el progreso del tratamiento o evolución de la condición clínica. Los informes serán sometidos al tribunal trimestralmente, hasta que la situación de la persona por sus síntomas y signos lo justifiquen, y este informe pueda mover al tribunal a tomar una determinación de que la persona no representa un riesgo para sí, para otros y la propiedad. 24 LPRA sec. 6155j.

El 20 de julio de 2022, el TPI celebró vista de seguimiento, en la que el Hospital Pavía informó que el señor Feliciano Cintrón aún no había sido ubicado en el Hospital Fernández Marina por falta de camas.

Luego, el 2 de agosto de 2022, el TPI celebró otra vista de seguimiento. En esta, compareció el señor Luis E. Romero Arvelo, Coordinador del Hospital Fernández Marina, quien informó que contaban con un espacio en el hospital, pero manifestó que el señor Feliciano Cintrón no tenía criterios para estar hospitalizado. La señora Kendra Sierra Piñero, trabajadora social de la ASSMCA, indicó que el señor Feliciano Cintrón hacía el turno veintisiete (27) para ubicación en un hogar de modalidad residencial. Por último, el TPI ordenó que se procediera con el traslado del señor Feliciano Cintrón al Hospital Fernández Marina. Del expediente apelativo surge que el señor Feliciano Cintrón ingresó al Hospital Fernández Marina el 3 de agosto de 2022.

Luego de varios trámites procesales, el 27 de octubre de 2022, reducido a escrito el 31 de octubre de 2022 y notificada el 2 de noviembre de 2022, el TPI emitió una *Orden* en la que dispuso lo siguiente:

> Se le ordena a la Administración de Servicios de Salud y Contra la Adicción (ASSMCA) ubicar al participante EDGARDO J. FELICIANO CINTRÓN, en o antes de la próxima vista, so pena de sanciones.

El 1 de diciembre de 2022, el TPI celebró una vista, en la que el señor Luis E. Romero Arvelo, Coordinador del Hospital Fernández Marina, "informó que el [señor Feliciano Cintrón] continúa recibiendo tratamiento psiquiátrico, está en estado base, preparado para irse". Además, el TPI ordenó a la ASSMCA mostrar causa por la cual no se le debía imponer sanciones por no haber ubicado al señor Feliciano Cintrón en un hogar.

El 17 de enero de 2023, notificada el 23 del mismo mes y año, el TPI emitió *Orden* en la que **impuso una sanción** de quinientos dólares ($500.00) a la ASSMCA por no haber ubicado al señor Feliciano Cintrón en un hogar, y ordenó su ubicación en o antes de la próxima vista.

El 28 de marzo de 2023, notificada el 31 del mismo mes y año, el TPI emitió *Orden*, en la que **impuso una segunda sanción** de quinientos dólares ($500.00) a la ASSMCA por no haber ubicado al señor Feliciano Cintrón en un hogar, y ordenó su ubicación en o antes de la próxima vista.

El 9 de junio de 2023, notificada el 15 del mismo mes y año, el TPI emitió *Orden*, en la que **impuso una tercera sanción** de quinientos dólares ($500.00) a la ASSMCA por no haber ubicado al señor Feliciano Cintrón en un hogar, y ordenó su ubicación en o antes de la próxima vista.

El 30 de noviembre de 2023, reducido a escrito el 1 de diciembre de 2023 y notificado el 6 de diciembre de 2023, el TPI emitió *Orden*, en la que **impuso una cuarta sanción** de quinientos dólares ($500.00) a la ASSMCA por no haber ubicado al señor Feliciano Cintrón en un hogar, y ordenó su ubicación en o antes de la próxima vista.

Durante la vista oral celebrada el 2 de mayo de 2024 ante este Tribunal, la ASSMCA, por conducto de su representación legal, reconoció ser parte en el caso de epígrafe. En su argumentación, señaló que el señor Feliciano Cintrón tenía dos casos activos bajo la Ley Núm. 408-2000, *supra,* el Civil Núm. K2JV2021-0972 sobre tratamiento compulsorio y el Civil Núm. K2JV2022-0326 sobre ingreso involuntario. Particularmente, la ASSMCA alegó que, en el presente caso, K2JV2022-0326, el Tribunal no ha ordenado que el tratamiento que deba recibir el señor Feliciano Cintrón sea uno compulsorio para poder ubicar al paciente y éste continúe

obligatoriamente en un tratamiento. Sostuvo que la evaluación de tratamiento compulsorio fue bajo el caso K2JV2021-0972, por lo que considera que era necesario que la modalidad de tratamiento de ingreso involuntario se cambiara a tratamiento compulsorio para que así el tribunal tuviera la facultad de supervisar los servicios que recibiera por el señor Feliciano Cintrón. Detallamos que dicha alegación no fue esbozada en el recurso original.

Además, la ASSMCA adujo que compareció ante el foro primario a mostrar causa e informó las gestiones realizadas para ubicar al paciente. En cuanto a las dificultades para ubicar al señor Feliciano Cintrón, señaló no tener la capacidad para atender a la población debido a la escasez de recursos para contratar hogares que presten servicios. Asimismo, indicó no contar con un presupuesto para poder pagar multas.

Por último, la ASSMCA arguyó que el caso se tornó académico debido a que el 27 de marzo de 2024 el señor Feliciano Cintrón fue ubicado en un hogar. No obstante, aceptó que, transcurridos más de dos (2) años desde que el TPI ordenó la ubicación, la ASSMCA no había cumplido con ubicar al señor Feliciano Cintrón en un hogar.

Por su parte, la representación legal del señor Feliciano Cintrón expuso que el TPI atendió de manera simultánea el caso sobre tratamiento compulsorio y el caso sobre ingreso involuntario. Añadió que el asunto a determinar es si fue razonable o no la actuación del foro primario al imponer a la ASSMCA una cuarta multa por incumplimiento con las órdenes del Tribunal. Por otro lado, aduce que el recurso que nos ocupa incumple con varios requisitos establecidos en el Reglamento del Tribunal de Apelaciones, por lo que este foro revisor carece de jurisdicción.

En el presente recurso, la controversia que nos ocupa se circunscribe a determinar si actuó correctamente o no el TPI al imponer la sanción de quinientos dólares ($500.00) a la ASSMCA

por incumplimiento con las órdenes del referido foro, en cuanto a la ubicación del señor Feliciano Cintrón en un hogar de servicios transicionales.

Como bien dispone la Ley Núm. 408-2000, *supra*, para poder garantizar que los servicios de salud mental se ofrezcan dentro de los criterios de calidad que se establecen en la Ley, "es importante que el estado intervenga en la implantación de los procesos de asistencia técnica, facilitación, monitoría durante el proceso, evaluación, licenciamiento de todas las instituciones proveedoras de servicios de salud mental"[23]. Además, nuestro ordenamiento jurídico reconoce la facultad de los tribunales para imponer sanciones económicas por incumplimiento con los términos, señalamientos en los procesos judiciales, así como por la desobediencia a las órdenes para el manejo del caso, cuando no medie justa causa[24].

Luego de analizar el expediente apelativo a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* así como haber escuchado los argumentos presentados por las partes durante la vista oral, no encontramos fundamento para variar el dictamen recurrido. Particularmente, concluimos que actuó razonablemente el TPI al imponer a la ASSMCA la sanción aquí impugnada. Al examinar el proceder del foro primario tampoco identificamos que se haya excedido en el ejercicio de su discreción, actuado de manera arbitraria o errado en la aplicación del derecho.

Ciertamente el TPI, como parte del manejo del caso, emitió múltiples órdenes a los fines de que la ASSMCA procediera a ubicar al señor Feliciano Cintrón en un hogar. Asimismo, en reiteradas ocasiones, apercibió a la parte peticionaria sobre la imposición de sanciones ante el incumplimiento con lo ordenado. Incluso, el foro

---

[23] Véase, Exposición de Motivos, Ley Núm. 408-2000, 24 LPRA sec. 6152 *et seq.*
[24] Regla 37.7 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.7.

primario concedió término a la ASSMCA para mostrar causa por la cual no se le debía imponer sanciones. Sin embargo, el incumplimiento reiterado conllevó a la imposición de la cuarta sanción aquí impugnada.

En vista de lo anterior, no cabe duda de que el señor Feliciano Cintrón estuvo más de dos (2) años en espera de un tratamiento de salud mental ante la falta de ubicación por parte de la ASSMCA. En esencia, los argumentos presentados por la parte peticionaria no justifican su incumplimiento con la política pública instituida en la Ley Núm. 408-2000, *supra*. Resulta inaceptable que un paciente de salud mental tenga que enfrentar una larga espera para recibir los servicios adecuados para atender sus necesidades. Por tanto, concluimos que procede expedir el auto de *certiorari* y confirmar el dictamen recurrido.

**IV.**

Por los fundamentos que anteceden, **expedimos** el auto de *certiorari* y **confirmamos** el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Barresi Ramos disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones